UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BILLY R. GREEN,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>JEH C. JOHNSON,<br>SECRETARY OF THE DEPARTMENT<br>OF HOMELAND SECURITY,<br><br>　　　　　　Defendant. | Case No. 1:13–cv–0913 (CRC) |

**MEMORANDUM OPINION**

Believe it or not, this *federal* employment discrimination case stems entirely from a bag of peanuts. In February 2011, Plaintiff Billy Green, an Immigration and Customs Enforcement ("ICE") deportation officer, attempted to purchase the snack at a liquor store near Washington's Union Station.[1] Purportedly dissatisfied with how the cashier returned his change, Green upbraided the clerk and the store manager, both of whom are Hispanic, asking if they spoke English and flashing his ICE business card. Another store employee later complained to ICE that Green had tried to intimidate her and her co-workers. A subsequent investigation by the agency's Office of Professional Responsibility failed substantiate the intimidation charge, but found that Green had engaged in "conduct unbecoming" of an ICE officer by "us[ing] his government identification for other than an official purpose." Def.'s Statement of Facts ¶ 13.

---

[1] The Court draws the facts from the Defendant's Statement of Material Facts Not in Genuine Dispute and other evidentiary exhibits filed by the parties. The Court treats the facts set forth in Defendant's Statement of Facts as uncontested because Plaintiff failed to dispute them through his own statement of undisputed facts. See Local Rule 7(h)(1) ("In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.").

An ICE disciplinary panel recommended that Green receive a five-day suspension. Id. ¶ 18. The deciding agency official mitigated the penalty to a letter of reprimand, which was never placed in Green's personnel file. Id. ¶ 22-23.

Not content to leave well enough alone, Green, who is black, filed an employment discrimination suit against the Secretary of the Department of Homeland Security ("DHS"), in his official capacity, under Title VII of the Civil Rights Act of 1964 ("Title VII"). Green alleges that ICE disciplined him because of his race and in retaliation for his participation in a co-worker's discrimination claim. He further contends that his reprimand has unfairly disqualified him from professional advancement opportunities, a phenomenon that he claims disproportionately affects African-Americans within the agency. Finally, he vaguely complains of experiencing a hostile work environment during a previous tenure in ICE's Newark, New Jersey field office. Discovery having been completed, DHS moves to dismiss Green's Amended Complaint or, in the alternative, for summary judgment. Finding Green's claims to be wholly unsubstantiated, the Court has little trouble granting summary judgment in favor of the agency.

**I.     Legal Standards**

Because discovery has been completed and the Court will rely on evidence in the record (or lack thereof), it will apply the standards for summary judgment under Rule 56 in deciding the motion. "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The Court shall grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party may oppose summary judgment using "any of the kinds of evidentiary materials listed in Rule 56(c)." Thomas v. Dist. of Columbia, No. 13-cv-1087, slip op. at 6

(D.D.C. Sep. 16, 2016) (quoting Celotex, 477 U.S. at 322-23).  This evidence includes materials found in the record, such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).  And like a motion under Rule 12(b)(6), the Court is obligated to review the "[u]nderlying facts and inferences . . . in the light most favorable to the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A Title VII claim can survive summary judgment if the plaintiff presents direct or circumstantial evidence of discrimination.  Dunaway v. Int'l Bd. of Teamsters, 310 F.3d 758, 763 (D.C. Cir. 2002).  If the plaintiff relies upon the latter, the Court turns to the familiar three-part framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). The plaintiff must first establish a prima facie case of discrimination. Once the plaintiff does so, the employer must put forward a nondiscriminatory reason for the adverse employment decision. The Court must then assess whether the jury could infer from the plaintiff's evidence that the employer's reason is merely pretext for discrimination. Id.; Brady v. Office of Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008).

**II.   Analysis**

A.  Discrimination and Retaliation Claims

Green's Amended Complaint contains two counts.  Count I asserts a claim of race discrimination based on the purported unfairness of Green's reprimand and its negative effect on his career advancement.  Amend. Compl. ¶¶ 71–83.  Count II alleges that ICE disciplined Green in retaliation for having provided a declaration and testimony in support of a co-worker's discrimination claim.  Amend. Compl. ¶¶ 84–98.

As for the discrimination claim, the reprimand itself is not an actionable adverse employment action under Title VII.  An employee suffers an adverse employment action "if he

experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." Forkkio v. Powell, 306 F.3d 1127, 1131 (D.C. Cir. 2002).  And "[i]n this Circuit, a letter of counseling, written reprimand, or unsatisfactory performance review, if not abusive in tone or language or a predicate for a more tangible form of adverse action, will rarely constitute adverse action." Herbert v. Architect of the Capitol, 839 F. Supp. 2d 284, 302 (D.D.C. 2012) (citing Hyson v. Architect of Capitol, 802 F. Supp. 2d 84, 102 (D.C. Cir. 2011)). Perhaps recognizing this, Green argues that the reprimand disqualified him from subsequent promotion opportunities.  Amend. Compl. ¶ 77.  Even so, the government has produced uncontested evidence that the reprimand was never placed in Green's personnel file and therefore could not have been considered in any decisions involving positions for which he may have applied.  Def.'s Statement of Facts ¶ 34; Def.'s Mot. Summ. J. ("MSJ"), Ex. 9.

In any event, Green has failed to offer any evidence to suggest that ICE's decision to reprimand him was tainted by discrimination.  The only evidence he provides are transcript excerpts from the depositions taken during discovery, of himself and the three individuals involved in the disciplinary process.  Without reference to any specific deposition testimony, Green offers the conclusory statement that "[t]he depositions in this case will . . . substantiate all of these race based actions and events."  Pl.'s Opp'n Def.'s MSJ ("Pl.'s Opp'n") 3.  Not so.  The depositions contain no evidence whatsoever that ICE's legitimate, non-discriminatory reason for reprimanding Green—his misuse of his ICE business card—was pretext for discrimination.  See id., Exs. B–D.  The Court will therefore grant summary judgment for DHS on Count I.

Green's retaliation claim is equally flawed.  Most immediately, each of the ICE employees who participated in the disciplinary process testified that they were unaware that

Green had participated in prior EEO activity, and Green offers no evidence to the contrary. Def.'s Statement of Facts ¶ 32. The Court will therefore grant summary judgment for the agency on Count II as well.

      B.  <u>Hostile Work Environment Claim</u>

Although not included as a separate count, the Amended Complaint suggests that Green was subjected to a hostile work environment during a previous tenure—of unstated duration—in ICE's Newark field office. Green specifically alleges that he "witnessed a swastika drawn prominently in the workplace." Amend. Compl. ¶ 58. He further claims that a co-worker "made [him] aware" that a noose had been displayed in a "racially charged manner" and that racial insults were still occurring after he left the Newark office. <u>Id.</u> Even assuming that these alleged instances of conduct are sufficiently pervasive to make out a hostile work environment claim, Green has offered no evidence to substantiate that they occurred, let alone that ICE management was aware of them. The Court will therefore grant summary judgment for the agency here too.

**III.  Conclusion**

Because Green has not offered any evidence from which a jury could infer unlawful discrimination or retaliation, the Court will grant DHS's motion for summary judgment and dismiss the case in its entirety.

Date:   September 23, 2016

                                                             CHRISTOPHER R. COOPER
                                                             United States District Judge